**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TAMICA SOUTHWARD,

    Plaintiff,

v.                                                                   Case No. 11-14208

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS,
ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In this action seeking review of the denial of disability insurance benefits to Plaintiff Tamica Southward, Magistrate Judge Charles E. Binder issued a report and recommendation ("R&R") advising the court to grant summary judgment to Defendant the Commissioner of Social Security.  Plaintiff filed timely objections to the R&R and Defendant responded.  After reviewing the R&R and the parties' briefs, the court concludes that a hearing is unnecessary.  *See* E.D. Mich. LR 7.1(f)(2).  For the reasons stated below and in the thorough, well-reasoned R&R, the court will overrule Plaintiff's objections, adopt the R&R, grant Defendant's motion for summary judgment, and deny Plaintiff's motion for summary judgment.

## I.  STANDARD

### A.  Timely Objections and *De Novo* Review

The filing of timely objections to an R&R requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de novo* review requires the court to re-examine all the relevant evidence previously reviewed by the magistrate judge, in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," *Thomas v. Arn,* 474 U.S. 140, 147 (1985).  As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

### B.  Substantial Evidence Standard

In a social security case, the court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g).  When, as here, the Appeals Council declines review of a plaintiff's claim, "the decision of the ALJ becomes the final decision of the [Commissioner]." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) (per curiam).

The court's review of the record for substantial evidence is quite deferential to the ALJ.  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Pittsburgh & Conneaut Dock Co. v. Dir., Office of Workers' Comp. Programs*, 473 F.3d 253, 259 (6th Cir. 2007), "even if that evidence could support a decision the other way," *Casey*, 987 F.2d at 1233.  Moreover, the court bases its review on the entire administrative record, not just what the ALJ cited.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## II. DISCUSSION

Plaintiff raises two objections to the R&R.  First, she challenges the magistrate judge's conclusion that the ALJ was not required to explain the weight he accorded to Nurse-Practitioner ("NP") Jennifer Kreiner's opinion of Plaintiff's impairments.  Second, she argues that, in determining whether the ALJ erred in deciding that work exists in the

national economy that she can perform, the magistrate judge should have considered whether the two jobs the vocational expert ("VE") deemed suitable for her, other than the housekeeper position that the VE wrongly reported as unskilled work under the Dictionary of Occupational Titles ("DOT"), existed in significant numbers in Michigan. Neither objection warrants rejection of the magistrate judge's recommendation that summary judgment should be granted to Defendant.

### A. Explanation of Weight Accorded to NP Kreiner's Opinion

In the ALJ's decision, he summarized an opinion by NP Kreiner, who examined Plaintiff on multiple occasions and attributed to Plaintiff more severe impairments than are reflected in the ALJ's ultimate determination of Plaintiff's residual functional capacity ("RFC"). However, the ALJ did not articulate his rationale for rejecting Kreiner's assessment, and Plaintiff now claims that the failure to do so constituted a reversible violation of the agency's regulations and rulings. While Plaintiff is likely correct that the ALJ should have given his reasons for not crediting NP Kreiner's opinion, any error in this case is harmless.

As Plaintiff recognizes, medical opinions by nurse-practitioners are not "acceptable medical sources" that can establish whether a social-security claimant has "a medically determinable impairment(s)." 20 C.F.R. § 404.1513(a). Nevertheless, such opinions are "other sources" that the agency "may also use [as] evidence . . . to show the severity of [the claimant's] impairment(s) and how it affects [her] ability to work." *Id.* § 404.1513(d)(1). Social Security Ruling ("SSR") 06-3p further clarifies that "[o]pinions from . . . medical sources[] who are not technically deemed 'acceptable medical sources' under [the agency's] rules[] are important and should be evaluated on

4

key issues such as impairment severity and functional effects." SSR 06-3p, 2006 WL 2329939, at *3 (Aug. 9, 2006). While the regulations do not explicitly address how the agency must evaluate such opinions, *id.* at *4, SSR 06-3p states that they should be evaluated under the factors applicable to opinions from "acceptable medical sources": how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion, *id.* at *4-5; *see* 20 C.F.R. § 404.1527(d).

As for whether the agency must explain, as opposed to merely consider, how much weight should be accorded to opinions from "other sources," SSR 06-3p provides as follows:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

2006 WL 2329939, at *6. Plaintiff reads the statement that "an adjudicator generally should explain the weight given to opinions from these 'other sources'" as creating a binding obligation to include such an explanation in the notice of determination or

decision. The magistrate judge disagreed, concluding that the ALJ was not required to set forth its rationale for rejecting NP Kreiner's opinion.

To resolve this question, the logical place to start is the Sixth Circuit's opinion in *Cruse v. Commissioner of Social Security*, 502 F.3d 532 (6th Cir. 2007). There, the court of appeals commented, albeit in dicta, on the impact of SSR 06-3p on a situation similar to that encountered here:

> In his decision denying [the plaintiff] disability insurance and SSI benefits, the ALJ stated the findings of nurse practitioner Hasselle, including her letter advising that "[the plaintiff] was unable to return to work." The ALJ's only explanation for discounting Hasselle's opinion was that "Hasselle is neither a medical doctor nor a vocational expert, and thus lacks the credentials for making such a determination." As it stands, the ALJ's decision was devoid of any degree of specific consideration of nurse practitioner Hasselle's functional assessments. Following SSR 06-03P, the ALJ should have discussed the factors relating to his treatment of Hasselle's assessment, so as to have provided some basis for why he was rejecting the opinion.

*Id.* at 541.

In the wake of *Cruse*, district courts in this circuit have varied widely in their interpretation of whether SSR 06-3p obligates an ALJ to discuss his reasons for not crediting opinions from "other sources." The magistrate judge relied on one in a line of cases holding that "the ALJ is not required to explain the weight given to the opinions of 'other sources,' or to give reasons why such an opinion was discounted." *Ball v. Astrue*, Civ. No. 09-208-DLB, 2010 WL 551136, at *5 (E.D. Ky. Feb. 9, 2010); *see also Brewer v. Astrue*, No. 4:11-CV-00081, 2012 WL 262632, at *10 (N.D. Ohio Jan. 30, 2012) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'" (internal quotation marks and alterations omitted));

6

*Hickox v. Comm'r of Soc. Sec.*, No. 1:09-CV-343, 2010 WL 3385528, at *7 (W.D. Mich. Aug. 2, 2010) ("SSR 06-3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto. . . . While Ruling 06-3p certainly encourages ALJ's [sic] to evaluate each opinion in the record, regardless of its source, the ruling is not written in imperative form." (internal quotation marks omitted)), *adopted*, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011); *Castle v. Astrue*, Civ. No. 08-137-GWU, 2009 WL 1158678, at *5 (E.D. Ky. Apr. 29, 2009) ("Moreover, SSR 06-3p goes on to state that 'there is distinction between what an adjudicator must *consider* and what the adjudicator must *explain* in the disability determination or decision.' The ruling states only that 'the adjudicator *generally* should explain the weight given to opinions from [the] "other sources," or otherwise ensure that the discussion of the evidence . . . allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, *when such opinions may have an effect on the outcome of a case.*'" (alteration in original) (citation omitted)); *cf. Nelms v. Astrue*, No. 1:09-CV-236, 2010 WL 3219123, at *7 (E.D. Tenn. Apr. 23, 2010) ("[T]he proposition that a procedural failure to discuss each of the SSR 06-03p factors is reversible error, as a legal matter, is incorrect."), *adopted*, 2010 WL 3219124 (E.D. Tenn. Aug. 12, 2010). *But see Castle*, 2009 WL 1158678, at *5 (distinguishing *Cruse* as considering an opinion by a nurse practitioner).

However, just as robust is a body of precedent supporting Plaintiff's position that remand is necessary when an ALJ does not explain the consideration accorded to a medical opinion from a source not considered an "acceptable medical source." *See, e.g.*, *Boran ex rel. S.B. v. Astrue*, No. 1:10CV1751, 2011 WL 6122953, at *14 (N.D.

7

Ohio Nov. 22, 2011) ("The mere citation to the opinions of ['other sources'] in a parenthetical is not sufficient to satisfy SSR 06-03p because it does not allow a subsequent reviewer to follow the ALJ's reasoning in disregarding these opinions, which might have had an effect on the outcome of the case."), *adopted*, 2011 WL 6122948 (N.D. Ohio Dec. 9, 2011); *Tracy v. Astrue*, No. 09-CV-59-JMH, 2011 WL 31067, at *4-5 (E.D. Ky. Jan. 5, 2011) (holding that when nurse-practitioner's opinion "could have had a significant effect on the hypothetical proposed to the vocational expert," ALJ "must do more than provide boilerplate language" addressing "credibility of the opinion [based on its] consistency with the record," and error was not harmless (citing *Cruse*, 502 F.3d at 541)); *Sommer v. Astrue*, No. 3:10-CV-99, 2010 WL 5883653, at *4 (E.D. Tenn. Dec. 17, 2010) (holding remand required when "the ALJ failed to state that he was rejecting [nurse-practitioner's] opinion or provide some basis for rejecting the opinion" even while "acknowledg[ing] that it is not necessary to clear the same hurdle that must be surmounted to discount the opinion of a treating source" (internal quotation marks omitted)); *Patterson v. Astrue*, No. 5:09-CV-1566, 2010 WL 2232309, at *14 (N.D. Ohio June 2, 2010) (remanding to ALJ when, "in rejecting [treating chiropractor's] opinion, the ALJ did not provide any rationale beyond his conclusory statement that [the] opinion is inconsistent with the objective medical evidence and appears to be based solely on [plaintiff's] subjective performance" because "[t]his rationale deprives the Court of the ability to engage in any meaningful review regarding an issue that may impact the outcome of this case").

     The position espoused in the former group of cases, and taken by the magistrate judge, is an arguable reading of the pertinent language of SSR 06-3p, which highlights

the distinction between what the agency "*must* consider" and what it "*must* explain" before noting only that an explanation of the weight assigned to opinions from "other sources" "*generally should*" be given. SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added); *see Hickox*, 2010 WL 3385528 (highlighting permissive language used in SSR 06-3p to describe necessary explanation of the consideration given to opinions from "other sources"). The second line of cases, however, is more in accord with the Sixth Circuit's indication that, in order to comply with SSR 06-3p, an ALJ "should . . . discuss[] the factors relating to his treatment of [a nurse-practitioner's opinion], so as to have provided some basis for why he was rejecting the opinion." *Cruse*, 502 F.3d at 541; *see Hatfield v. Astrue*, No. 3:07-CV-242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) ("The Sixth Circuit . . . appears to interpret the phrase 'should explain' as indicative of strongly suggesting that the ALJ explain the weight, as opposed to leaving the decision whether to explain to the ALJ's discretion." (citing *Cruse*, 502 F.3d at 541-42)).

Thus, there is something to Plaintiff's argument that the ALJ erred by not articulating why his RFC finding differed from NP Kreiner's assessment of Plaintiff's limitations. But even if the ALJ should have given this explanation, his failure to do so is at most harmless error under the circumstances of this case. *See Austin v. Astrue*, No. 10-CV-14159, 2012 WL 1970227, at *9 (E.D. Mich. Mar. 19, 2012) (declining to remand based on failure to explain treatment documents that constituted opinions from "other sources" when "ALJ's decision provides a sufficiently detailed analysis to allow the reader to follow his decision" and remand "would not change the case's outcome"), *adopted sub nom. Austin v. Comm'r of Soc. Sec.*, 2012 WL 1970449 (E.D. Mich. June

9

1, 2012)); *Carroll v. Astrue*, No. 1:09-CV-1232, 2010 WL 2643420, at *10-11 (N.D. Ohio July 1, 2010) ("[T]here is no requirement to remand if there is no reason to believe that a different outcome could result had the 'other source's' opinions been assessed." (citing *Kobetic v. Comm'r of Soc. Sec.,* 114 F. App'x 171, 173 (6th Cir. 2004))).

At the hearing, the VE noted that the significant difference between a hypothetical individual with the limitations that the ALJ ultimately incorporated into his RFC, and someone with the restrictions given in NP Kreiner's opinion, was a mild versus a moderate limitation in the ability to maintain concentration over two-hour increments: the former would be capable of performing unskilled work of the type cited by the VE, while the latter would be unable to work. (R. at 65-66.) As Defendant points out in its summary judgment motion, the ALJ specifically found that, based on Plaintiff's testimony at the hearing, she "has the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks." (*Id.* at 23.) Other medical evidence in the record supports the ALJ's finding that Plaintiff's short-term concentration was only mildly, if at all, limited: an examination conducted at Genesee County Community Mental Health in October 2006 reported that Plaintiff's attention/concentration was within normal limits, (R. at 249), and consulting physician Dr. Ashok Kaul concluded from a review of Plaintiff's records in January 2008 that she "is able to understand, remember and carry out simple instructions on a sustained basis," making her "capable of unskilled work," (R. at 267). Given that the ALJ included NP Kreiner's opinion in his summary of the medical evidence, it is clear that he considered it when calculating Plaintiff's RFC, but simply found it less persuasive than the contrary evidence in the record. *See Hall v. Astrue*, No. 1:09 CV

2514, 2010 WL 5621291, at *9-10 (N.D. Ohio Dec. 23, 2010) ("[A]lthough the ALJ did not specifically state the weight he accorded to the non-medical sources' opinions, the ALJ's discussion of all of the evidence on the record . . . makes clear to a subsequent reviewer his reasoning for not fully incorporating the findings contained in [those opinions] into his RFC determination—lack of consistency."), *adopted sub nom. Hall v. Comm'r of Soc. Sec.*, 2011 WL 194615 (N.D. Ohio Jan. 20, 2011).

Moreover, the opinion provided by NP Kriener is nothing more than a form on which she checked boxes indicating Plaintiff's level of impairment. It is devoid of any discussion of the observations or medical evidence that led NP Kreiner to her assessments; it does not indicate how long and how frequently NP Kreiner had been treating Plaintiff; and it appears to be based entirely on Plaintiff's subjective description of her limitations. *See Robinson v. Comm'r of Soc. Sec.*, No. 3:11-CV-0063, 2012 WL 194966, at *12 (N.D. Ohio Jan. 20, 2012) (finding harmless error in ALJ's failure to mention report submitted by case manager who had counseled plaintiff when it was evident that opinions given were "based in large part on the subjective statements of Plaintiff" and case manager "had little special knowledge or insight into the severity of Plaintiff's impairments that could not be determined from Plaintiff's testimony"); *McCommons v. Astrue*, No. 10-CV-14992, 2012 WL 1986418, at *15 (E.D. Mich. Mar. 13, 2012) (holding remand was not required to allow ALJ to discuss opinion from plaintiff's therapist because form submitted was not "supported by objective clinical data," "relied predominantly on [plaintiff's] own subjective statements," and was internally inconsistent). Because of these flaws, NP Kreiner's opinion is so patently deficient that a remand to provide a more detailed explanation of the ALJ's decision to

11

discount it would be futile. *Cf. Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (holding that violation of rule requiring agency to provide "good reasons" for weight given opinion of treating physician is harmless error when "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it").

In describing how he reached his RFC determination, the ALJ did note that he "considered opinion evidence in accordance with the requirements of . . . [SSR] 06-3p," (R. at 24), and referenced NP Kreiner's opinion, (*id.* at 26). The fact that he failed to detail his reasons for not according substantial weight to that opinion does not warrant remand. *See Carroll*, 2010 WL 2643420, at *11 (finding "boilerplate language stating that weight was given to 'other opinion evidence,' including acceptable medical sources, health care providers not otherwise acceptable medical sources, and non-medical sources" adequately took account of opinions from "other sources" when "the ALJ's opinion as a whole sufficiently addressed the evidence and consisted of more than mere conclusory statements"). Plaintiff's objection to this aspect of the magistrate judge's decision is not grounds for rejecting the R&R.

### B. Availability of Work in the National Economy

In her summary judgment motion, Plaintiff points out that the VE mistakenly testified at the hearing that an individual capable of only unskilled work could perform a job as a housekeeper, a position which the DOT actually classifies as semi-skilled work. Although Plaintiff did not point out this conflict at the hearing, and the VE represented that her testimony was consistent with the DOT, (*see* R. 63-65), Plaintiff asserts that the ALJ's failure to detect and reconcile this conflict merits remand; Plaintiff also contends that, after eliminating the housekeeper jobs from the VE's estimate of jobs available to

an individual with Plaintiff's RFC, that number is too small to support the ALJ's finding that work suitable for Plaintiff is sufficiently available in the national economy.

The magistrate judge opined that, contrary to Plaintiff's arguments, the ALJ discharged his obligation to ensure that the VE's testimony was consistent with the DOT through his inquiries at the hearing and, absent an objection by Plaintiff's counsel, he had no further duty to confirm that the VE had testified accurately. *See* SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008); *Martin v. Comm'r Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Plaintiff has not challenged this ruling, but instead attacks the magistrate judge's alternate holding that the other positions cited by the VE, night crew clerk and cleaner II, existed in large enough numbers to provide substantial evidence in support of the ALJ's determination.

Regardless of whether Plaintiff is correct about the sufficiency of the jobs available to a person with the RFC the ALJ ascribed to Plaintiff—and the court is inclined to believe she is not, as the VE estimated that somewhere between 1600 and 3000 night crew clerk and cleaner II positions are available in Michigan, (R. at 64); *see Martin*, 170 F. App'x at 374-75 ("870 jobs can constitute a significant number in the geographic region."); *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding ALJ's decision that "more than 1350 jobs in the local economy which Hall could perform despite his reduced capacity established the existence of work in significant numbers" was supported by substantial evidence)—she has waived any objection on this issue due to her failure to contest the magistrate judge's primary holding that the ALJ was not required to independently confirm that the VE accurately represented the DOT. *See*

*McClanahan*, 474 F.3d at 837.  The court will adopt the magistrate judge's recommendation to grant Defendant's motion for summary judgment.

### III. CONCLUSION

For the reasons stated above, IT IS ORDERED that Plaintiff's objections [Dkt. # 14] are OVERRULED and the magistrate judge's report and recommendation [Dkt. # 13] is ADOPTED IN FULL AND INCORPORATED BY REFERENCE.

IT IS FURTHER ORDERED that Defendant's motion for summary judgment [Dkt. # 11] is GRANTED and Plaintiff's motion for summary judgment  [Dkt. # 9] is DENIED.

 s/Robert H. Cleland   
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  September 7, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 7, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner   
Case Manager and Deputy Clerk  
(313) 234-5522